# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SPENCER DODSON CRISSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-00476-WJE |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Spencer Dodson Crissey seeks judicial review[1] of a final administrative decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1382–1385.[2] The Administrative Law Judge ("ALJ") found that although Mr. Crissey had several severe and non-severe impairments, he retained the residual functional capacity ("RFC") to do limited light work. The ALJ concluded that Mr. Crissey is capable of performing past relevant work as a sales clerk, or, alternatively, work as merchandise marker, routing clerk, or linen supply load builder. After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. Thus, the Commissioner's decision is AFFIRMED.

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

[2] Mr. Crissey also filed a claim for disability insurance benefits under Title II of the SSA, 42 U.S.C. §§ 401-434, which the Commissioner initially denied. (AR 356-59, 473-79). Mr. Crissey requested a hearing before the ALJ on the Title II claim as well. At the July 22, 2019 hearing, however, counsel for Mr. Crissey requested to amend the alleged onset date for Mr. Crissey's disability and moved to dismiss the Title II claim. (*See id.* 298-99, 366). The ALJ granted the request, amended the alleged onset date, and dismissed the Title II disability insurance claim. (*Id.* 82, 299). In his Complaint, Mr. Crissey states that he "seeks review of a final [u]nfavorable [d]ecision by the Commissioner of the Social Security Administration on his applications for SSA disability insurance and Supplemental Security Income benefits." (Doc. 3 at ¶ 1). Because Mr. Crissey withdrew his Title II claim and the ALJ did not address Mr. Crissey's Title II claim, the Court addresses only Mr. Crissey's Title XVI claim. *See* 42 U.S.C. §§ 405, 1383(c)(3).

## I. Background

On October 27, 2017, Mr. Crissey protectively filed a claim for SSI, alleging a disability onset date of January 1, 2015, due primarily to "[l]ong term lung condition; A[DD]; [a]nxiety [d]isorder-GAD; [d]epression; [b]one degeneration-two hip replacements so far; [g]enetic [a]rthritis; [a]udio [d]isplacement [d]isability; [s]leep [d]isorders; OCD; [and] [a]sthma." (*Id.* 82, 338-39, 468-72). The Commissioner denied Mr. Crissey's claim at the initial level, and Mr. Crissey appealed the denial to an ALJ. (*Id.* 360-65, 366). On July 22, 2019, the ALJ held a hearing, during which Mr. Crissey, through his counsel, requested to amend his alleged onset date to the date on which he protectively filed his application for benefits. (*Id.* 295, 299). The ALJ granted Mr. Crissey's request and amended the alleged onset date to October 27, 2017. (*Id.* 82, 299).

On August 6, 2019, the ALJ denied Mr. Crissey's claim for SSI. (*Id.* 79-93). The ALJ determined that although Mr. Crissey had severe and non-severe impairments, none of them met or exceeded a listed impairment. (*Id.* 86). He also determined Mr. Crissey had an RFC to perform light work with certain limitations, including:

> lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit 6 hours and stand or walk 6 hours. He can occasionally climb, balance on even surfaces, stoop, kneel, couch and crawl. He should avoid more than occasional exposure to extremes of cold and heat, high humidity, and vibration. He can tolerate less than occasional but more than no exposure to fumes, odors, dusts, gases[,] and poor ventilation.

(*Id.* 86-87). In determining that Mr. Crissey could perform past work and other jobs, the ALJ asked a vocational expert ("VE") whether a hypothetical individual with Mr. Crissey's age, education, and work experience, along with the RFC identified above would be capable of performing Mr. Crissey's past work. (*Id.* 91-92, 323). The VE testified that such an individual would retain the ability to perform that work, including work as a sales clerk. (*Id.* 91-92, 323). The ALJ then added an additional limitation, specifically "that the individual would not be

interacting with the public." (*Id.* 323). The VE testified that such a limitation would preclude the hypothetical individual from performing Mr. Crissey's past work, but that such an individual could perform work as a merchandise marker, routing clerk, or linen supply load builder. (*Id.* 92-93, 323-24).

Following the ALJ's unfavorable opinion, Mr. Crissey requested review from the Appeals Council. (*Id.* 7-8). The Appeals Council denied Mr. Crissey's request for review, leaving the ALJ's decision as the Commissioner's final decision. (*Id.* 1-4). As Mr. Crissey has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the SSA in 42 U.S.C. § 1382c(a) rests on the claimant. *Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019) (citation omitted); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (citation omitted). The Social Security Administration has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R. § 416.920; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

As a part of this process, at step one, "the ALJ decides whether the claimant is currently engaging in substantial gainful activity." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citation omitted). At step two, "the ALJ determines whether the claimant is suffering from a severe impairment." *Id.* (citation omitted). At step three, "the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations." *Id.* (citation omitted). At step four, "the ALJ determines whether the claimant retains the [RFC] . . . to perform his or her past relevant work." *Id.* (citation omitted). Finally, at step five, the ALJ "considers whether there exist work opportunities in the national economy that the

claimant can perform given his or her medical impairments, age, education, past work experience, and RFC." *Id.* at 1091-92 (citation omitted).

### III. Standard of Review

The United States Court of Appeals for the Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (citation omitted). "Substantial evidence" is less than "a preponderance of the evidence," merely requiring that a reasonable person would find the evidence adequate to support the Commissioner's decision. *Id.* (citation omitted); *Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

### IV. Discussion

Mr. Crissey argues three main points in his appeal before the Court: (1) the ALJ failed to support the mental RFC with substantial evidence; (2) the ALJ failed to support the physical RFC with substantial evidence; and (3) the ALJ's step four determination is unsupported by substantial evidence. The Court considers each argument in turn and will affirm on all grounds.

    A.    *Substantial Evidence Supports the Mental RFC*

First, Mr. Crissey argues that in formulating the RFC at Step Four the ALJ failed to account for his non-severe mental impairments and associated limitations identified at Step Two of the

sequential process. Second, because the only medical opinion that addresses Mr. Crissey's mental impairments is that of Dr. James Morgan, who is a non-examining, non-treating physician, Mr. Crissey contends substantial evidence does not support the mental RFC. Finally, Mr. Crissey maintains that the ALJ failed to fulfill her duty to develop the record fully and fairly by not issuing a subpoena to Mr. Crissey's treating psychiatrist, Dr. David Sternburg. The Court addresses each argument seriatim and affirms on each basis.

> 1. *Although the ALJ Identified Non-Severe Mental Impairments and Associated Limitations at Step Two, the ALJ Did Not Err by Omitting Mental Limitations in Mr. Crissey's RFC*

Mr. Crissey contends that the ALJ erred when she failed to account for his non-severe mental impairments and associated limitations in formulating his RFC. The analysis required at Step Two to determine the severity of a claimant's mental impairments is different from the analysis used to formulate a claimant's RFC at Step Four. For this reason, the Court cannot say that the ALJ erred by omitting a mental limitation in Mr. Crissey's RFC. Alternatively, even assuming that the ALJ should have incorporated mental limitations in the RFC, because the ALJ included an additional restriction accounting for Mr. Crissey's mild impairments in her hypothetical to the VE, any error would be harmless. Therefore, the Court will affirm on this basis.

In support of his argument, Mr. Crissey cites to a variety of cases that have found error in situations where an ALJ concludes that a claimant suffers from mild limitations when considering the "paragraph B" conditions and does not include limitations in the claimant's RFC or in the hypothetical posed to the VE. (Doc. 18 at 26-27 (citing, *e.g., Ollila v. Colvin*, No. 13-3345-CV-S-DGK-SSA, 2014 WL 7238128, at * 3 (W.D. Mo. Dec. 17, 2014))). In response, the Commissioner cites to numerous cases in which the reviewing courts reject similar arguments and affirm the ALJ's decision. (Doc. 23 at 7-8 (citing, *e.g., Taylor v. Berryhill*, No. 4:17-cv-01050-DGK-SSA,

2018 WL 5410977, at *3 (W.D. Mo. Oct. 29, 2018))). In the cases cited by the Commissioner, the reviewing courts recognize the difference between the Psychiatric Review Technique employed at Steps Two and Three of the sequential process and the RFC analysis employed at Step Four. *See, e.g., Taylor*, 2018 WL 5410977, at *3; *Johnson v. Berryhill*, No. 4:17-cv-0416-DGK-SSA, 2018 WL 2336297, at *2 (W.D. Mo. May 23, 2018).

The Court finds the reasoning of the cases cited by the Commissioner to be more persuasive. *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (explaining that "[t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Here, at Step Two of the sequential process, the ALJ considered the "paragraph B" criteria and determined that Mr. Crissey had "mild limitations" in the broad categories of "interacting with others" and "adapting or managing oneself." (AR 85). Because Mr. Crissey's mental impairments did not cause more than a "mild" limitation in any of the "paragraph B" factors, the ALJ determined that Mr. Crissey's mental impairments were non-severe. (*Id.* 86 (citing 20 C.F.R. § 416.920a(d)(1))). The ALJ then explicitly recognized the different analyses used at Steps Two and Four and stated that "the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis."[3] (*Id.*). Since the ALJ employs different standards at

---

[3] In his Reply Suggestions Mr. Crissey points to the recent decision in *Berutti v. Saul*, No. 4:20-cv-00641-NKL, 2021 WL 1499313 (W.D. Mo. Apr. 16, 2021). (Doc. 24 at 4 n.5). The *Berutti* court confronted an argument similar to that raised by Mr. Crissey and stated that the ALJ's reasoning, which mirrors the statement made by the ALJ in Mr. Crissey's case, was "insufficient." *See* 2021 WL 1499313 at *2. However, the *Berutti* court did not address the different analyses employed at Steps Two and Four and did not address any of the cases in which the reviewing court found that it was not error for the ALJ to omit mental limitations in the RFC after assessing mild limitations at Step Two. *See generally id.* Further, similar to many of the other cases cited by Mr. Crissey, the ALJ in *Berutti* did not account for the claimant's mental limitations in her hypothetical to the VE. *See id.* at *3. The ALJ's additional limitation in the hypothetical posed to the VE in Mr. Crissey's case distinguishes this matter from many of the cases cited by Mr. Crissey, including *Berutti. See, e.g., id.*; *Ollila*, 2014 WL 7238128, at *3 (recognizing that "the ALJ included no mental limitations in the RFC or the hypothetical posed to the VE.").

Steps Two and Four, the Court cannot determine that the ALJ's failure to include limitations in Mr. Crissey's RFC to account for his non-severe mental impairments results in reversible error. *See, e.g., Taylor*, 2018 WL 5410977, at *3; *Johnson*, 2018 WL 2336297, at *2.

Further, even if the Court concluded that the ALJ erred in failing to account for her findings of mild impairments at Step Two in the RFC identified at Step Four, the Court would likely affirm the ALJ's decision. In completing her analysis, the ALJ concluded that Mr. Crissey could perform his past relevant work of a sales clerk. (AR. 91). She then made an alternate finding that Mr. Crissey could perform work as a merchandise marker, routing clerk, and linen supply load builder. (*Id.* 92). The ALJ made this determination based on the testimony of a VE. (*Id.*) At the July 22, 2019 hearing, in questioning the VE, the ALJ added an additional limitation to her hypothetical beyond those addressed in the RFC, specifically "that the individual would not be interacting with the public." (*Id.* 323, *see id.* 92). The VE testified that although the additional limitation "would preclude the past work," other jobs existed for the individual. (*Id.* 324, *see id.* 92). Therefore, even if the ALJ erred by not including the additional limitation in Mr. Crissey's RFC, such error would amount to harmless error and the Court would affirm the ALJ's decision on this basis. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (defining harmless error as "when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred." (internal quotation marks and citations omitted)); *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (explaining when a VE's testimony may constitute substantial evidence).

### 2. *The ALJ Did Not Err when Relying on Dr. Morgan's Opinion*

Mr. Crissey maintains that the mental RFC is unsupported because the opinion of Dr. Morgan, who did not examine or treat Mr. Crissey, is not substantial evidence. Because the ALJ

relied on more than Dr. Morgan's testimony in reaching her conclusions regarding Mr. Crissey's mental impairments, the Court affirms on this ground as well.

"Ultimately, the RFC determination is a medical question, that must be supported by some medical evidence of [the claimant's] ability to function in the workplace." *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) (internal quotation marks and citations omitted). The RFC need not be supported "by a specific medical opinion." *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (citation omitted). The ALJ may rely "on a reviewing physician's report at [S]tep [F]our when the burden is on the claimant to establish an inability to do past relevant work." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citations omitted). "It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." *Id.* (citation omitted).

In making her conclusions as Step Two of the sequential process, the ALJ relied both on the objective medical evidence in the record and on medical opinions. (*See* AR 85-86). Specifically, in making her finding that Mr. Crissey had a "mild limitation" in "interacting with others," the ALJ cited to Dr. Sunita S. Muranjan's treatment notes from a mental status exam in November 2017, which showed that Mr. Crissey was "pleasant and cooperative" and his "mood was described as 'pretty good.'" (*Id.* 85, 974). Further, the ALJ pointed out that Mr. Crissey "has presented with grossly normal mental statuses over time." (*Id.* 85, *see id., e.g.*, 623, 626, 1162, 1165). After considering the evidence in the record, the ALJ then stated that "[t]he conclusion that the claimant does not have more than a mild limitation in any of the areas considered under 'paragraph B' is supported by the opinion of James Morgan, Ph.D., the state agency psychological consultant." (*Id.* 85). Even if Dr. Morgan's opinion would not constitute substantial evidence standing alone, the ALJ considered more than the Dr. Morgan's opinion in reaching her

conclusions at Step Two. *See Casey*, 503 F.3d at 697. The decision did not require a "specific medical opinion," *Twyford*, 929 F.3d at 518, and at least "some medical evidence" supported the ALJ's decision. *Lawrence*, 970 F.3d at 995. Therefore, the Court will affirm on this basis as well.

### 3. *The ALJ Did Not Fail in Her Duty to Develop the Record*

As his last point of contention regarding the mental RFC, Mr. Crissey contends that the ALJ "failed to fulfill her duty to develop the record fully and fairly and subpoena the records from [Mr.] Crissey's treating psychiatrist." (Doc. 18 at 28). Because Mr. Crissey's attorney at the July 22, 2019 hearing represented to the ALJ that the record of the case was complete, the ALJ did not fail in her duty to develop the record.

Although "[a]n ALJ has the duty to develop the record independent of the claimant's burden to prove his case, . . . the burden of persuasion to prove disability and to demonstrate [the] RFC remains on the claimant." *Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004) (citation omitted). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Shelton v. Berryhill*, No. 1:15cv00044 PLC, 2017 WL 818875, at *8 (E.D. Mo. Mar. 2, 2017) (quoting *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011)). "If other evidence in the record provides a sufficient basis for an ALJ's decision, then an ALJ 'is permitted to issue a decision without obtaining additional medical evidence.'" *Id.* (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The Eighth Circuit has noted that "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *see Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

Mr. Crissey contends that the ALJ failed to fulfill her duty to develop the record because his attorney sent a letter to the ALJ which stated:

> My office and my client, Mr. Crissey, have both made repeated efforts to acquire medical records from Dr. Sternberg. Dr. Sternberg is Mr. Crissey's psychiatrist and also prescribes his pain management medication.
> Dr. Sternberg has repeatedly refused to provide these records both at the initial level and to our office. He has finally provided the attached letter outlining Mr. Crissey's treatment, diagnoses, and medications. Acquiring any further progress notes will require a subpoena. His information is below: . . .
> Thank you for your time and consideration in this matter.

(AR 1158). At the July 22, 2019 hearing before the ALJ, the ALJ explicitly asked Mr. Crissey's attorney, "[s]o we have a complete record today?" (*Id.* 298). To which Mr. Crissey's attorney responded "[w]e do." (*Id.*)

Mr. Crissey's attorney also did not specifically request that the ALJ issue a subpoena to obtain Dr. Sternberg's records, but only stated that "[a]quiring any further progress notes will require a subpoena." (*Id.* 1158). As discussed above, in reaching her conclusions as to Mr. Crissey's mental impairments, the ALJ looked to the medical evidence in the record, which provided a sufficient basis for her decision. *See Shelton*, 2017 WL 818875, at *8. Further, Dr. Sternberg eventually indicated that "he would not comply with" a request for information "as he felt he had no information that will assist with [Mr. Crissey's] disability claim." (AR 344-45). On this record, the Court cannot conclude that the ALJ failed in her duty to develop the record. *See Shannon*, 54 F.3d at 488 ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."); *Eichelberger*, 390 F.3d at 592 (recognizing that "the burden of persuasion to prove disability and to demonstrate [the] RFC remains on the claimant."). Therefore, the Court will affirm on this basis as well.[4]

---

[4] In his Response, the Commissioner argues that because Mr. Crissey's attorney did not comply with the procedures set forth in the Hearings, Appeals, and Litigation Law Manual ("HALLEX") to request that the ALJ issue a subpoena, the ALJ "had no obligation to subpoena Dr. Sternberg's records." (Doc. 23 at 10). Because it appears likely that the

B.  *Substantial Evidence Supports the Physical RFC*

As his second broad argument, Mr. Crissey argues that substantial evidence does not support the physical RFC for two reasons: (1) because the ALJ relied on Dr. Donald Gentle's opinion, and (2) neither Dr. Gentle nor the ALJ considered Mr. Crissey's recurring cellulitis. The Court addresses both arguments and affirms on both bases.

1.  *The ALJ Properly Relied on Dr. Gentle's Opinion at Step Four*

Mr. Crissey maintains that Dr. Gentle's opinions do not constitute substantial evidence to support the physical RFC because Dr. Gentle did not examine or treat Mr. Crissey and Dr. Gentle's specialty did not pertain to Mr. Crissey's conditions. Given that the ALJ could properly rely on a reviewing physician's report in determining the RFC at Step Four, the Court affirms.

As stated above, the ALJ may rely "on a reviewing physician's report at [S]tep [F]our when the burden is on the claimant to establish an inability to do past relevant work." *Casey*, 503 F.3d at 697 (citations omitted).[5] "It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment."[6] *Id.* (citation omitted).

---

HALLEX is not binding and does not hold legal force, the Court does not address this argument and it does not affect the Court's analysis in the instant case. *See Ellis v. Astrue*, No. 4:07cv1031 AGF, 2008 WL 4449452, at *15-*16 (E.D. Mo. Sept. 25, 2008) (recognizing that "[w]hile the Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX, other Circuits have," collecting cases, and concluding that "[t]his Court believes the Eighth Circuit would hold that HALLEX does not have the force of law").

[5] Mr. Crissey relies on three cases in making his argument that substantial evidence does not support the physical RFC because the ALJ relied on Dr. Gentle's opinion: *Jenkins v. Apfel*, 196 F.3d 922 (8th Cir. 1999); *Frankl v. Shalala*, 47 F.3d 935 (8th Cir. 1995); and *Arn v. Astrue*, No. 4:10-cv-01239-NKL, 2011 WL 3876418 (W.D. Mo. Sept. 1, 2011). However, these cases do not provide the support that Mr. Crissey seeks. In each of these cases, the Court made clear that the opinion of a non-examining, non-treating physician *alone* may not constitute substantial evidence to support the RFC. *See Seitz v. Colvin*, No. 5:15-cv-06151-NKL, 2016 WL 3920463, at *8 (W.D. Mo. July 18, 2016) (recognizing this distinction). Here, the ALJ properly relied on other evidence in the record, in addition to Dr. Gentle's opinion.

[6] In both his Suggestions in Support of his Complaint and in his Reply Suggestions, Mr. Crissey points to this Court's decision in *Fowler v. Saul*, No. 4:18-cv-00963-WJE, Doc. 17 (W.D. Mo. Sept. 16, 2019). In *Fowler*, this Court stated that "an ALJ may not make his or her own inferences and generally cannot rely on a non-examining source for substantial evidence to support [his or her] conclusion." *Fowler*, Doc. 17 at 9. However, the Court made that statement in deciding that the ALJ had given improper weight to the opinion of a non-treating source when deciding to discredit a treating source's opinion. *See id.* Therefore, *Fowler* does not provide the support Mr. Crissey seeks.

The ALJ found Dr. Gentle, the state agency medical consultant's, opinion to be "generally persuasive." (AR 90). Specifically, the ALJ noted that "Dr. Gentle opined that the claimant would be capable of performing work at the light exertional level with additional postural and environmental limitations." (*Id.*). The ALJ concluded that Dr. Gentle's "findings are well supported by a relatively detailed narrative explanation of the limitations assessed with reference to the objective medical evidence." (*Id.*).

In reaching her RFC formulation, the ALJ relied on Dr. Gentle's opinion as only one piece of evidence to support her conclusion. Prior to turning to the medical opinions in the case, the ALJ extensively reviewed the medical evidence and Mr. Crissey's own complaints of his symptoms. (*See* AR 87-89). In her review of the medical evidence, the ALJ cited to evidence that showed both an improvement in Mr. Crissey's symptoms and that showed his continued problems. (*See generally id.*). Further, the ALJ relied not only on Dr. Gentle's opinion, but she also found the opinion of Dr. Alan Cornett, a treating physician, to be persuasive. (*Id.* 90). Because the ALJ may properly rely on a reviewing physician's report at Step Four and the ALJ here relied on other evidence in the record to support the RFC, the Court will affirm on this ground as well.[7]

### 2. *The ALJ Did Not Err By Failing to Consider Mr. Crissey's Cellulitis*

Mr. Crissey contends that substantial evidence does not support the physical RFC because the ALJ failed to consider Mr. Crissey's cellulitis. Because Mr. Crissey did not identify this as an impairment in his application for benefits or reference it at the July 22, 2019 hearing before the ALJ, the ALJ was not required to consider it.

A social security claimant bears the burden to establish his or her disability. *Dols*, 931 F.3d at 746. Where a social security claimant fails to allege limitations in function as a result of an

---

[7] The Court notes that Mr. Crissey does not allege that the other evidence the ALJ relied on in reaching her RFC determination failed to constitute substantial evidence.

impairment, he or she waives the right to raise that impairment on appeal. *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (stating that because the claimant "never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing . . . this claim was waived from being raised on appeal." (citation omitted)); *see Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (stating that "[t]he administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." (internal quotation marks and citations omitted)).

In his application for benefits, Mr. Crissey identified ten conditions that led him to file for disability, none of which include cellulitis. (*See* AR 338-39). Similarly, Mr. Crissey did not mention cellulitis in his testimony before the ALJ. (*See id.* 299-321). Because Mr. Crissey bears the burden to prove his disability and did not raise his cellulitis as a condition that limited his ability to function, the ALJ did not have an obligation to consider it. *See Pena*, 76 F.3d at 909. Therefore, the Court will affirm on this basis as well.[8] *Anderson*, 344 F.3d at 814.

> C. *Although Mr. Crissey's Past Experience as a Sales Clerk May Not Constitute Past Relevant Work, the ALJ's Alternative Finding at Step Five is Supported by Substantial Evidence*

The Court now turns to Mr. Crissey's final main argument, that substantial evidence does not support the ALJ's decision at Step Four and that because the RFC and resulting hypotheticals were flawed, the VE's testimony cannot be viewed as substantial evidence. Even assuming that Mr. Crissey's prior work as a sales clerk at North Face/Outdoor LLC does not constitute substantial gainful activity, because the ALJ made an alternate finding by proceeding to Step Five and

---

[8] The Commissioner offers other reasons why the Court should affirm on this basis, including that "[m]ost of the treatment notes [Mr. Crissey] cites in support of [his] argument were not submitted to the ALJ and many are dated after the ALJ's decision." (Doc. 23 at 12-13). In his Reply Suggestions, Mr. Crissey argues that the treatment records pertain to the applicable period of time between when he filed his claims and when the ALJ issued her written decision. (Doc. 24 at 9). Since Mr. Crissey waived his right to assert that his cellulitis limited his ability to function, the Court need not address this argument.

identifying additional jobs in the national economy that Mr. Crissey could perform, any error would be harmless, and the Court affirms on this basis as well.

"[W]hen the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred" the error is harmless. *See Lucus*, 960 F.3d at 1069.

Mr. Crissey argues that he did not make the requisite amount of money during his employment as a sales clerk for North Face/Outdoor LLC to constitute substantial gainful activity and, therefore, this job does not constitute past relevant work. (Doc. 18 at 31). Because this position cannot be considered past relevant work, Mr. Crissey maintains that the ALJ erred in determining at Step Four that Mr. Crissey could return to this position. (*Id.*) However, Mr. Crissey fails to acknowledge that the ALJ did not end the analysis at Step Four in this case. Rather, the ALJ proceeded to Step Five and asked the VE whether someone with Mr. Crissey's age, education, work experience, and with the RFC identified by the ALJ could work jobs other than Mr. Crissey's past work. (AR 323). In doing so, the ALJ also added an additional limitation, that the person "would not be interacting with the public." (*Id.*) The VE testified that although such an individual could not perform Mr. Crissey's past work, he or she could perform work as a merchandise marker, routing clerk, and linen supply load builder. (*Id.* 324).

Even if the ALJ would have concluded that none of Mr. Crissey's prior positions constituted substantial gainful activity, based on the alternative finding, it appears that the ALJ would still have concluded that Mr. Crissey is not disabled. Since Mr. Crissey has not shown that he suffered any prejudice even if the ALJ committed such an error at Step Four, the error would be harmless. *See Lucus*, 960 F.3d at 1069. Further, because the Court has concluded that the ALJ did not err in determining the RFC and the ALJ posed the hypothetical to the VE using that RFC, the VE's testimony is substantial evidence to support the ALJ's decision. *See Courtney v. Comm'r,*

*Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) ("We have consistently held that if substantial evidence supports the ALJ's phrasing of the hypothetical to the [VE], and there was no conflict between the [VE's] testimony and the DOT, the ALJ properly relied on the testimony." (internal quotation marks and citations omitted)). Therefore, the Court will affirm on this basis as well.

## V. Conclusion

For the reasons set forth herein, the Court finds the Commissioner's determination that Mr. Crissey was not disabled is supported by substantial evidence in the record. Judgment shall be entered in accordance with this Order.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Commissioner is affirmed.

Dated this 25th day of June, 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge